# CHARLESTON.

HARTMYER *et al.* v. EVERLY *et al.*

Submitted September 11, 1913.    Decided October 28, 1913.

1. APPEAL AND ERROR—*Harmless Error—Instructions.*

   Where under the case as presented, as a matter of law the judgment could only be that which has been entered, the appellate court will not reverse for errors in instructions to the jury.   (p. 88).

2. EJECTMENT—*Title of Plaintiff—Construction of Deed—Other Instruments.*

   In ejectment, the plaintiff can not extend the description in his deed by reference to a patent or other paper not referred to or adopted for description in the deed.   (p. 91).

3. EVIDENCE—*Parol Evidence—Construction of Deeds—Extrinsic Evidence.*

   Description of land in a deed, free and clear from ambiguity, can not be varied, controlled or contradicted by parol or extrinsic evidence. It is conclusive as to what land is intended to be conveyed by the deed.   (p. 91).

Error to Circuit Court, Preston County.

Ejectment by Christian Hartmyer and others against John L. Everly and others. Judgment for defendants, and plaintiffs bring error.

*Affirmed.*

*P. J. Crogan* and *Hughes & Conley,* for plaintiffs in error.

*Lazzelle & Stewart,* for defendants in error.

ROBINSON, JUDGE:

The action is ejectment. The jury found for defendants, and judgment followed accordingly. If the theory of the case advanced by plaintiffs was sound, several instructions given to the jury over the objection of plaintiffs would be so erroneous and prejudicial as to warrant the reversal which they seek. But we find that theory not supported by the record. Plaintiffs proved no title to the land in controversy. In no event could they recover. Though instructions to the jury were erroneous, yet, since no other judgment than the one entered could have been rightly given, plaintiffs are not prejudiced. *Reilly* v. *Nicoll,* 72 W. Va. 189. If a verdict had been

returned for plaintiffs, it could not have stood. As a matter of law, they could not recover without showing title in themselves.

Plaintiffs argue the error in instructions on the assumption that their evidence tended to prove a case. The case should never have been submitted to the jury. In any event, defendants were entitled to the judgment which was entered in their favor. In this opinion, we need only to discuss the total insufficiency of plaintiffs' evidence to make any case at all.

That a plaintiff in ejectment must ordinarily recover on the strength of his own title is elementary. That in this case the burden was on plaintiffs to show paper title to the land sought to be recovered, counsel will no doubt concede. It is quite true that title by adverse possession will suffice for recovery in ejectment. But here plaintiffs rested not on actual possession by enclosure or direct occupancy of the land in controversy. No evidence offered tended to prove such actual possession by them. They sought to hold the land as within the bounds of their title papers.

The land in controversy is a small parcel of about ten acres, lying between tracts of land which unquestionably belong to plaintiffs and defendants respectively. Plaintiffs say that it is within the proper bounds of their land; defendants say it is not within the bounds of plaintiffs' land, but that however this may be they have title by long adverse possession. As to whether the last mentioned claim of defendants is well founded we have no concern, under the case as it presents itself for decision. Since plaintiffs have proved no title to the parcel, it matters not to whom the same actually belongs.

The boundary of land which plaintiffs say embraces the parcel in controversy came to them and a brother of theirs by descent from their father. The brother, before the institution of this suit, conveyed his interest to one of the plaintiffs. To the ancestor, William Hartmyer, the boundary was conveyed by William Hagans, the deed containing a description by specific metes and bounds, calling for one hundred and eighty-nine and one quarter acres, more or less, and reciting that the land conveyed is the same that was conveyed to

William Hagans by Brown and Hagans, commissioners, by deed of record. To William Hagans it had been conveyed by Brown and Hagans, special commissioners in a chancery suit, the deed containing a description by exactly the same definite metes and bounds and calling for the same number of acres as the metes and bounds and number of acres given in the other deed to which we have referred. This deed of the special commissioners shows that they conveyed the land pursuant to a decree to fulfil certain contracts for the sale of land made by Harrison and Elisha M. Hagans, then, deceased, and that the conveyance was upon a contract for the sale of the land therein mentioned made by Harrison and Elisha M. Hagans to one Thomas J. Collins, who had assigned his right thereunder to the grantee, William Hagans. The deed recites that the tract thereby conveyed is one that had been contracted to Collins. And, as we have said, it specifically describes the tract by metes and bounds, and gives it acreage as one hundred and eighty-nine and one quarter.

Now, plaintiffs introduced these two deeds in the chain of their father's title, but conceded that the calls as given in them, which we may iterate were the same in each deed, would not take in the small parcel in dispute. But they claimed that these deeds contained mistakes in the specific descriptions which they uttered, and they sought to amend the same by reference to a written contract for the sale of the land made by Harrison and Elisha M. Hagans to Collins. The court permitted the introduction of that contract. The description of the land given in it is brief and general. It is for two tracts of land, in a locality named, "the one tract known as the Faw Tract, and the other lying adjoining it on the south; supposed to contain in the aggregate, two hundred and twenty acres." Then plaintiffs introduced a patent from the Commonwealth of Virginia to William Faw, dated Aug. 11, 1788, containing a description by metes and bounds of a tract of land in the same locality. Plaintiffs claimed that the deeds were meant to contain the same description as that given in the patent, and that the deeds so read would embrace the parcel in dispute. The trial court evidently adopted such a theory, and permitted plaintiffs to rely upon the deeds as

amended in description by the patent.    These papers make
the only showing of title that plaintiffs presented, other than
the admission by all parties at the beginning of the trial that
their respective titles would run back to a common source.

The deeds spoke for themselves.    They could not be changed
by the patent.    Those deeds contained independent particular
description of the land and in no way adopted or referred to
the patent in aid of the particular description which they con-
tained.    True, the deed of the special commissioners recited
that it was made to carry out a contract for the sale of land
made by Harrison and Elisha M. Hagans to Collins, but it by
no means referred to the contract for a description of the land
conveyed.    It did not even say that the contract was a written
one.    It gave its own description of the land the contract
should cover, and that description was definite and particular
by metes and bounds.    If the contract had been referred to
for further description, the particular description in the deed
would prevail over it; for, as we have seen, it contained only
the most general terms of description.    It does say that one of
the tracts sold by it is the Faw Tract, but it does not refer to
any patent for a description of the tract.    The tract could be
called the Faw Tract as it was and still not be all the land
originally patented there to William Faw.    How often do
tracts of land called by a general name like this lose a part by
conveyance and still retain the name.

A court itself in a chancery suit carrying out this contract
for the sale of land evidently ascertained the specific boundary
the contract embraced and caused the same to be conveyed by
special commissioners in fulfillment thereof to William
Hagans as the assignee of Collins.    William Hagans as such
assignee by his acceptance of the deed gave practical con-
struction to the meaning of the contract as to the particular
boundary intended by its general description.    How can we
say that he meant the description to be different or that a
mistake was made by the court or its duly appointed special
commissioners in ascertaining what should be conveyed by the
contract?    William Hagans seems to have been satisfied that
the description in the deed to him embraced all that he was
entitled to as holder of the contract, though the deed called

for a much smaller number of acres. He was bound to know just what the description in the deed to him embraced. So was the ancestor of plaintiffs when he took a conveyance from William Hagans by the same metes and bounds. There is nothing referred to in either deed which will control or change the same particular description given in each. The calls in the patent, or the patent itself, was not resorted to in the contract for description of the land. The contract was not resorted to in either of the deeds for description. In none of the papers was the patent referred to in any way. The parties plainly were not conveying by the patent, but by clear description independent therefrom, written into and adopted by their deeds. Then from these papers what speaks any intention of the parties to convey what the Faw patent had conveyed? There is clearly no ambiguity in the deeds. Looking to them, we find them certain as to meaning in the description of the land. Not a single term indicates that they were meant to convey the land by the description in the patent. They cannot be changed by the assumption that they are wrong, nor by extrinsic evidence when they are unambiguous. No part of the description in them is inconsistent with any other part. Where a part of the description in a deed is inconsistent with the remaining part, and thus shown to be erroneous, it may be rejected; or, when the description given is uncertain and ambiguous, parol or extrinsic evidence will be admitted to show to what it truly applies. But where terms are used in a description which are clear and intelligible, the court will put a construction upon those terms, and parol or extrinsic evidence will not be admissible to control the legal effect of such description. Devlin on Real Property and Deeds, sec. 1042; *Bond* v. *Fay,* 12 Allen, 86. Plaintiffs could not change the terms of their deeds by extrinsic evidence, as they were permitted to undertake to do. They could not, in ejectment, reform the deed by which they held their land, so as to take in the parcel sought to be recovered. This case is controlled by a well known general rule which has been concisely stated as follows: ''Where the description in a deed of the premises intended to be conveyed is clear and free from ambiguity, it can not be varied, controlled, or contradicted by

parol or extrinsic evidence. In such case the deed must be held to be conclusive evidence as to what land is intended by the grantor to be conveyed, the quantity of land, and likewise the conclusive evidence of his intention to include in or exclude from the instrument particular land." 17 Cyc. 616.

Plaintiffs' evidence did not appreciably tend to make a case, The jury having reached the verdict that the court should have directed, the judgment entered thereon will be affirmed.

*Affirmed.*